UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. 4:20-cv-03256 |
| | § | |
| $90,150.00 in U.S. CURRENCY, | § | |
| | § | |
| $73,474.00 in U.S. CURRENCY, and | § | |
| | § | |
| $22,400.00 in U.S. CURRENCY, | § | |
| Defendants. | § | |

## VERIFIED AMENDED COMPLAINT FOR CIVIL FORFEITURE IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, seeks forfeiture *in rem* against $90,150.00, $73,474.00, and $22,400.00 in U.S. Currency seized on or about February 27, 2020, and alleges upon information and belief the following:

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355, as this is a forfeiture action brought by the United States.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), and 1395. A substantial part of the acts and omissions occurred in this District, and the Defendant Property was found in this District.

### DEFENDANT PROPERTIES SUBJECT TO FORFEITURE

3. The First Defendant Property is $90,150.00 in U.S. Currency seized on or about February 27, 2020, from the residence of Brian Busby, who was then the Chief Operating Officer (the "COO") for the Houston Independent School District ("HISD").

4. The Second Defendant Property is $73,474.00 in U.S. Currency seized on or about February 27, 2020, from the residence of Anthony Hutchinson, who owns a landscaping business that has contracts with HISD (the "Contractor").

5. The Third Defendant Property is $22,400.00 in U.S. Currency seized on or about February 27, 2020, from a fanny pack placed under a seat in the vehicle of Anthony Hutchinson.

6. The United States alleges that the Defendant Properties constitute or are traceable to the proceeds of federal programs theft and wire fraud, and a conspiracy commit such offenses.

## STATUTORY BASIS AND NATURE OF ACTION

7. This civil action in rem is brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense. Title 18 U.S.C. §§ 666 (theft of federal funds) and 1343 (wire fraud) are "specified unlawful activity" pursuant to 18 U.S.C. §1956(c)(7). A conspiracy to commit such offenses is a violation of 18 U.S.C. § 1349.

## FACTS

8. HISD is the largest school district in Texas and includes approximately 280 schools, as well as administration buildings. As the seventh-largest school district in the United States, HISD receives millions of dollars in federal funds. Based on HISD annual financial statements ending June 30, 2017, HISD received approximately $185 million in federal funds for that year.

9. The COO at HISD oversees an annual operating budget of more than $250 million and leads a workforce of more than 7,000 employees from six major departments. One of those departments is Facilities, Maintenance, and Operations, which includes maintenance of HISD school grounds.

10. The COO and the Contractor met over 10 years ago at a meet-and-greet event between HISD officials and contractors, and they became friends.

11. The Contractor owns a lawn and landscaping business, Southwest Wholesale, LLC (f/k/a Southwest Wholesale Nursery), that has performed work for HISD over the years, starting on a limited basis in 2010. The Contractor also owns a construction company that has contracts with HISD.

12. Since approximately 2016, Southwest Wholesale has held a multi-million dollar contract with HISD for grounds maintenance, landscaping, tree pruning and removal, and irrigation systems for certain HISD properties. Southwest Wholesale would also periodically submit proposals for other HISD projects, such as the renovation of athletic playing fields.

**The Fraud Against HISD**

13. Based on the facts and circumstances, there is reason to believe that the COO and the Contractor devised a scheme to defraud for obtaining property valued at more than $5,000 by means of material false and fraudulent pretenses, representations and promises; that they intended to and did defraud HISD, which is an organization that receives federal assistance in excess of $10,000 each year; that they agreed that the Contractor would provide kickbacks to the COO; that it was reasonably foreseeable that interstate wire communications would be used in

3

furtherance of the fraud; and that such interstate wire communications were in fact used, including but not limited to Southwest Wholesale submitting fraudulent invoices to HISD via email.

14. Specifically, the COO conspired with the Contractor and others, known and unknown, to cause HISD to approve proposals submitted by Southwest Wholesale; to cause or allow HISD to pay overtime for HISD personnel to mow properties that Southwest Wholesale was being paid to mow; and to cause HISD to pay Southwest Wholesale for work that Southwest Wholesale was contracted to perform but did not in fact perform.

15. The purpose of the scheme and conspiracy to defraud was for the Contractor and the COO to enrich themselves: the Contractor's company received payments from HISD due to the scheme to defraud, and the COO shared in those proceeds by receiving kickbacks and benefits from the Contractor, including payments in cash.

### A. Frequency Charts: Southwest Wholesale Systematically Overbilled for Mowing

16. Since approximately April 2013 and continuing through at least February 2020, Southwest Wholesale systematically overbilled HISD by charging for at least 35 cuts per property per year, although only 20 cuts per property per year were performed.

17. Internally, Southwest Wholesale maintains a monthly mowing schedule called a Frequency Chart that it incorporated into contracts with its subcontractors. Each year, there would be one cut per month from November through January and two cuts per month from March through September, with some variation in the other months. Southwest Wholesale ensured that 20 cuts were performed per year per HISD property. However, starting in

approximately April 2013, Southwest Wholesale falsely invoiced HISD for at least 35 cuts per HISD property per year.

18. Southwest Wholesale would submit invoices to HISD by email, and the invoices generally matched the level of work called for in the HISD contract (at least 35 cuts per month) but not the actual amount of work performed (20 cuts per month). Through this scheme, Southwest Wholesale was able to bill for an extra 15-16 cuts per year per HISD property.

19. Based on reviewed records, Southwest Wholesale has overbilled HISD for mowing services each year from 2013 through 2019 in amounts from approximately $604,928 per year to approximately $991,694 per year.

20. From April 2013 through February 2020, Southwest Wholesale systematically overbilled HISD in the amount of approximately $6,031,828.78.

## B. Southwest Wholesale Used HISD Labor to Complete Contracted Work

21. Southwest Wholesale also used HISD labor for some of the properties that it had agreed to mow, particularly at five schools in 2018. As part of the conspiracy, the COO caused his managers to authorize and approve overtime pay to HISD grounds crews to mow some of the properties that Southwest Wholesale was being paid to mow.

22. Specifically, after finishing with properties that HISD mowed itself, grounds crew personnel were given the option to work at overtime rates to mow school grounds that Southwest Wholesale was responsible for mowing.

23. The fact that the Southwest Wholesale jobs were completed by HISD grounds crews was not documented at HISD, but the overtime was submitted and HISD paid the overtime

wages. In addition, Southwest Wholesale would still bill HISD for mowing those properties, although it did not actually perform that work.

### C. Southwest Wholesale Billed for Specific Renovations that were Not Performed

24. In March 2018, Southwest Wholesale submitted a proposal for the renovation of playing fields at Sharpstown Middle School (a/k/a Sharpstown International School) at a contract price of $984,600. The COO approved the proposal even though another person at HISD raised concerns about the high price.

25. Southwest Wholesale failed to perform much of the work specified in the contract, including but not limited to installing a handicap ramp, marking and striping, repairing the asphalt on the track, planting 55 65-gallon trees, and installing two trashcans in cement bases. The invoice, however, was paid in full by HISD.

26. HISD subsequently entered into a second agreement with Southwest Wholesale to provide construction on the same Sharpstown playing fields, including both new work and some work that was supposed to have been performed under the first contract. HISD paid the invoice of $194,420 in full even though, again, some of the specified work was not performed.

### The Cash Kickbacks

27. It was part of the conspiracy that in order to share the millions in criminal proceeds that Southwest Wholesale obtained from the conspiracy to commit fraud on HISD, the Contractor would provide benefits and pay cash kickbacks to the COO in exchange for his assistance with the fraud.

### D. The COO Received Cash Kickbacks and Made Multiple Cash Deposits

28.  The Contractor's construction company provided extensive renovation and decoration to the COO's residence from November 2014 through January 2015, and again in 2019, but did not charge the COO for the work. As a further benefit, third-party invoices were paid for by the Contractor.

29.  The Contractor also provided cash payments to the COO. The COO's bank account activity indicates that he has deposited unusually large amounts of cash, in addition to any cash payments he might have chosen to hold as cash or spend.

30.  During 2016, cash in the amount of $52,280 was deposited to the bank account of the COO's daycare center. Further, those cash deposits appear to have been structured so as not to reach the $10,000 currency transaction-reporting threshold per deposit.

31.  From 2018 to 2019, the aggregate amount of $319,735 in currency was deposited into the COO's account at Navy Federal Credit Union.

32.  Overall, from calendar year 2015 through 2019, there were cash deposits of approximately $2,330,315 to various bank accounts that the COO controls. A review of records shows that those cash deposits did not stem from the HISD salaries of the COO and his wife.

### E. Cash Deposits were Made After Meetings Between the Contractor and the COO

33.  On March 3, 2018, the COO sent a text message to the Contractor with a photograph of two bank deposit envelopes. One envelope had "10,000" written on it, and the other had "8,800.00" written on it. The text message from the COO stated, "No biggie but just wanted you to know what you gave me bro."

7

34. The Contractor would sometimes write large checks from his business account to other people, like subcontractors, and have them cash the check and return most of the cash to the Contractor.

35. Shortly after the COO would meet with the Contractor or the Contractor's representative, the COO would sometimes structure multiple cash deposits into various bank accounts he controlled. Under the totality of the circumstances, these cash deposits are believed to be from cash kickbacks the Contractor gave to the COO for his assistance with the fraud on HISD.

36. Specifically, on September 25, 2018, the COO visited the Contractor's residence and stayed for over an hour. Over the next week, the COO deposited a total of $21,000 in cash into two bank accounts. He deposited $9,000 cash into a Wells Fargo account on September 26, 2018, which was the day after the meeting; and another $3,000 in cash the following day. He also made two separate cash deposits on October 1, 2018, into a Navy Federal Credit Union account, in the total amount of $9,000.

37. In addition, on January 14, 2019, the COO met at a bank with a person who conducts financial transactions on behalf of the Contractor and his companies. That day, the COO deposited $8,100 in cash at Navy Federal Credit Union; and $9,500 at Wells Fargo Bank. On separate subsequent days, he made two additional deposits of $9,500 cash each time to a Wells Fargo account he controlled.

## CONCLUSION

38. The Defendant Properties are large amounts of cash seized on or about February 27, 2020, while the conspiracy and scheme to defraud HISD was ongoing. Under the totality of the circumstances, it is believed that the $90,150.00 in cash found at the residence of the COO, the $73,474.00 in cash found at the residence of the Contractor, and the $22,400.00 in cash found in the Contractor's vehicle constitute proceeds of the conspiracy to commit fraud on HISD.

39. The Defendant Properties are thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to specified unlawful activity, including federal programs theft and wire fraud.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in any of the Defendant Properties which are subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than 35 days from the date the Complaint or this Amended Complaint was sent to you in accordance with Rule G(4)(b); or, if this Amended Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official internet government forfeiture site, in accordance with Rule G(5)(a)(ii)(B).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, whether electronically

or at the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. A copy must be sent to the undersigned Assistant United States Attorney at the United States Attorney's Office, 1000 Louisiana, Suite 2300, Houston, Texas 77002.

## REQUESTED RELIEF

The United States seeks a final judgment forfeiting the Defendant Properties to the United States and any other relief to which the United States may be entitled.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By: /s/ Kristine E. Rollinson
Kristine E. Rollinson
SDTX Federal No. 16785
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

## CERTIFICATE OF SERVICE

A true and correct copy of this pleading was served on all counsel of record via electronic court filing on October 28, 2020.

/s/ Kristine E. Rollinson
Kristine E. Rollinson

## Verification

I, Andy C. Liu, a Special Agent with the United States Federal Bureau of Investigation, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Amended Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 - 5 and 8 - 38 of the Amended Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation. Those facts are true and correct to the best of my knowledge and belief.

Executed on the 28 day of October 2020.

_____
Andy C. Liu, Special Agent
Federal Bureau of Investigation