United States District Court
Southern District of Texas
**ENTERED**
March 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § § § | |
| VS. | § | |
| $90,150.00 in U.S. Currency, | § § | CIVIL ACTION NO. 4:20-CV-3256 |
| $73,474.00 in U.S. Currency, and | § § § | |
| $22,400.00 in U.S. Currency, | § § § | |
| Defendants. | § | |

## **ORDER**

In this *in rem* civil forfeiture case, before the Court are a motion to stay filed by the Government (Doc. No. 30) and motions to dismiss filed by Claimants Anthony Hutchison and Brian Busby (Doc. Nos. 19 and 29, respectively). The Government has responded in opposition to these motions to dismiss. (Doc. No. 10). For the following reasons, the Court denies in part Busby's motion to dismiss, grants Hutchison's motion to dismiss, and grants the motion to stay the case.

### I. Background

On February 27, 2020, the Government seized $90,150 in cash from the residence of Brian Busby, then the Chief Operating Officer ("COO") for the Houston Independent School District ("HISD"). The same day, the Government also seized from Anthony Hutchison, a business owner who has contracts with HISD, $73,474 in cash from his residence as well as $22,400 in cash from a fanny pack in his vehicle. These three amounts of cash (collectively, the "Defendant Properties") were seized during the execution of federal search and seizure warrants at the homes of Busby and

Hutchison.[1] According to the pleadings, the Government seized the cash property because the money constitutes proceeds of a conspiracy to commit fraud on HISD. In particular, the Government alleged that the Defendant Properties "constitute or are traceable to the proceeds of federal programs theft and wire fraud, and conspiracy to commit such offenses." (Doc. No. 8, at 2). *See* 18 U.S.C. §§ 666; 1343; 1349.

The details of the alleged offenses are described in the operative complaint (Doc. No. 8). The allegations may be summarized as follows. Hutchison owns Southwest Wholesale, a lawn and landscaping company which had a contract with HISD for grounds maintenance and landscaping. Busby, during his tenure as COO for HISD, oversaw maintenance of HISD school grounds. By April 2013, Busby and Hutchison were allegedly engaged in a scheme to defraud HISD by causing HISD to approve proposals submitted by Southwest Wholesale and to pay Southwest Wholesale for work it did not perform. In exchange for Busby's assistance with the fraud, Hutchison allegedly provided Busby with cash kickbacks and other benefits. The three specific types of fraud alleged by the Government are that Southwest Wholesale (a) systematically overbilled HISD for lawncare work it did not perform; (b) used free HISD labor to mow the grounds of at least five schools that it was paid to mow; and (c) falsely billed for playing field renovations that were not performed. The proceeds gained by this alleged scheme allegedly exceeded $6 million from its inception to the time of the seizures.

The complaint describes various amounts of cash that Busby illegally received over the term of the alleged conspiracy. From 2015 to 2019, there were cash transactions totaling $2,330,315 that were deposited in various bank accounts controlled by Busby. Some of these

---

[1] On December 14, 2021, Busby and Hutchison were indicted by a grand jury in cause number 4:21-CR-588. The indictment contains a notice that the seized cash, the same cash at issue in this civil case, is subject to criminal forfeiture. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c). This order does not address the merits of the criminal forfeiture allegations.

2

deposits were allegedly structured so as to avoid triggering currency transaction reporting requirements. According to the Government, these cash deposits did not stem from Busby's HISD salary nor from his wife's.

The Government further alleges that Hutchison extracted cash from his business by unusual means. For instance, Hutchison would write large checks from his business account to subcontractors and then have them cash the check and return most of the cash to him. This method of extracting cash made it appear as though Hutchison was paying a subcontractor, rather than withdrawing cash for himself. The Government concludes that the end result of this scheme was that Hutchison ended up with cash amounts that he could surreptitiously use to pay Busby.

The complaint further alleges that Busby received cash payments at meetings with Hutchison or his representative. The Government alleges three specific dates when Hutchison allegedly provided cash to Busby. First, on March 3, 2018, Busby sent a text message to Hutchison with a photograph of two bank deposit envelopes—one with "10,000" written on it and the other "8,800.00"—and stating "No biggie but just wanted you to know what you gave me bro." Second, on September 25, 2018, Busby visited Hutchison's residence, and Busby deposited $21,000 in cash within a week after the visit. Third, on January 14, 2019, Busby met with a person who conducts financial transactions on behalf of Hutchison, and Busby deposited $8,100 and $9,500 into two separate bank accounts later that day. On subsequent days, he made two additional deposits in the amounts of $9,500.

On February 27, 2020, the Government seized the Defendant Properties. The Government subsequently filed this action for forfeiture *in rem* against the cash seized on September 18, 2020. (Doc. No. 1). The Government amended its complaint on October 28, 2020. (Doc. No. 8). Claimants Busby and Hutchison each filed motions to dismiss the amended complaint (Doc. Nos.

3

29 and 19, respectively). In those motions, Defendants claim that this matter should be dismissed because (1) the Government failed to timely file its complaint, (2) the complaint was not properly verified, and (3) the complaint fails to sufficiently allege a connection between the moneys seized and the alleged criminal activity. Their motions are currently pending before this Court.

The Court previously granted a stay in this case, on the basis that civil discovery in this case would adversely affect the government's then-ongoing criminal investigation into the alleged criminal activities of Claimants Busby and Hutchison. (Doc. No. 16). The Court later extended the stay, which expired on August 24, 2021. *See* (Doc. No. 21). The Government requested a further extension of the stay (Doc. No. 22), opposed by both Claimants Busby (Doc. No. 23) and Hutchison (Doc. No. 24). On January 4, 2022, the Government filed an amended motion to stay on the basis that the Claimants had been indicted by a grand jury in a related criminal case. (Doc. No. 30). That motion remains pending before this Court.

This Court held a hearing on the motion to stay. At the hearing, the Claimants requested a ruling on their motions to dismiss before addressing the motion to stay. The Claimants also indicated that if their motions to dismiss are denied, they are not opposed to a stay. Therefore, the only arguments addressed in this order are those presented in Claimants' motions to dismiss.

## II.   Legal Standard

Under Rule G(8)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a claimant in a civil asset forfeiture action may move to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

In a civil forfeiture action, the complaint must also meet the heightened pleading requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "SUPPL. R."). *See United States v. $49,000 Currency*, 330 F.3d 371, 375 n.8 (5th Cir. 2003). The sufficiency of the complaint is governed by Rule G(2). *See* SUPPL. R. G(8)(b)(ii). Rule G(2) provides that the "complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." SUPPL. R. G(2)(f). At trial, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1).

When the government's theory of forfeiture is that the property was "involved in the commission of a criminal offense," then the government must establish "a substantial connection between the property and the offense." *Id.* § 983(c)(3).

### III. Analysis

The Claimants argue that the forfeiture complaint must be dismissed because the complaint does not sufficiently allege that the seized cash was involved in or traceable to the crimes alleged.[2] In response, the Government contends that the facts stated in the complaint give rise to a reasonable inference that the $90,150 in cash found in Busby's residence constituted cash kickbacks and that the $73,474 and $22,400 in cash found at Hutchison's residence were cash proceeds ready to be shared with Busby. The Court will address the sufficiency of the Government's allegations against the Defendant Properties separately, addressing the money seized from Busby's residence first, and the money seized from Hutchison's second.

A. $90,150 Seized from Busby

Busby's alleged receipt of cash bribes, as well as his possession of a large sum of cash at the same time as his engagement in the alleged bribery scheme, suggests the cash seized is substantially connected with unlawful activity. Moreover, the Government has alleged that Busby's cash deposits of approximately $2,330,315 to various bank accounts in his control did not stem from his HISD salary or his wife's. (Doc. No. 8, at 7). "In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity." *United States v. $52,000.00, More or Less, in U.S. Currency*, 508 F. Supp. 2d 1036, 1042 (S.D. Ala. 2007); *see also United States v. $250,000 in*

---

[2] Claimants additionally contend that the complaint must be dismissed because (1) the Government failed to timely file its complaint, and (2) the complaint was not "verified" within the meaning of SUPPL. R. G(2)(a).

6

*United States Currency*, 808 F.2d 895, 899 (1st Cir. 1987) ("The absence of any apparent legitimate sources for the [Currency] suggests that the money is derived from drug transactions.").

Busby contends that the cash came from independent legal sources rather than as kickbacks from the alleged bribery scheme. In particular, Busby states that he is an avid gambler and owns multiple rental properties with paying tenants. (Doc. No. 29, at 2). He also states that he manages the financial affairs of the woman who raised him and that he regularly possessed cash to spend on her behalf. (*Id.*). Busby contends that the $90,150 seized came from these sources of funds, not any illegal activity. Whatever the merits of these contentions, the Court, in evaluating a motion to dismiss, must look only to the allegations contained in the Government's complaint. *See Sonnier*, 509 F.3d at 675.

The Court concludes the Government has stated sufficiently detailed facts to support a reasonable belief that it will be able to meet its burden of proof at trial vis-à-vis the $90,150 seized from Busby's residence. *See* SUPPL. R. G(2)(f).

B. $73,474 and $22,400 Seized from Hutchison

With respect to the Defendant Properties seized from Hutchison's residence—the $73,474 seized from his house and the $22,400 seized from a fanny pack in his vehicle—the Court concludes the Government has failed to allege a sufficient connection between the cash seized and alleged unlawful activity. While Busby was the payee in the alleged bribery scheme—and therefore had to keep the cash *somewhere*—Hutchison's role was that of a payor. Just because Hutchison allegedly paid bribe money in the past does not mean that all the cash in his possession was going to be paid as bribe money in the future. The Government's allegations may eventually be proven correct, but it does not allege specific facts sufficient for this Court to conclude that the Government can meet its burden of proof regarding the cash seized from Hutchison's possession.

7

The Court appreciates that having nearly $100,000 in cash at one's home would certainly stimulate the curiosity of even the most naïve person. Nevertheless, the allegations against the money seized from Hutchison at most give rise only to a mere suspicion that the cash seized was intended to be used as part of the alleged scheme to defraud HISD. *United States v. One Lot of U.S. Currency Totalling $14,665*, 33 F. Supp. 2d 47, 49 (D. Mass. 1998) ("The possession of cash, even in large amounts, does not create a rebuttable presumption that one is engaged in criminal activity.").

Moreover, unlike the allegations against Busby, the allegations against Hutchison do not state that he lacked a legitimate income. Accordingly, the Government has failed to meet its burden under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Hutchison's motion to dismiss (Doc. No. 19) is granted under Federal Rule of Civil Procedure 12(b)(6).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Claimant Hutchison's motion to dismiss (Doc. No. 19) and **DENIES in part** Claimant Busby's motion to dismiss (Doc. No. 29).[3] The Court accordingly **GRANTS** the Government's motion to stay this case (Doc. No. 30).

Signed at Houston, Texas, this 10th day of March, 2022.

Andrew S. Hanen
United States District Judge

---

[3] The Court is not unaware of the fact that the parties have raised issues of whether the Government's forfeiture complaint was properly verified and whether this suit was timely filed. Embedded in this latter issue is the validity of General Order No. 2020-07 of the Southern District of Texas extending certain statutory deadlines due to the COVID-19 pandemic. Since this Court is staying this case pending the outcome of the criminal trial, and since there are criminal forfeiture proceedings pending concerning this same property, the Court finds no need to decide these issues at this time.